Argued December 22; new ballot title ordered December 23, 1937

OREGON MERCHANTS' LEGISLATIVE LEAGUE
v. SNELL, ET AL.

(74 P. (2d) 592)

In Banc.

*Walter L. Tooze,* of Portland, for appellant.

*I. H. Van Winkle,* Attorney-General, for respondents.

BELT, J. This is an appeal from certain ballot titles prepared by the attorney-general for submission to the voters of the state for their approval or rejection of an initiative measure amending section 4 of Article XV of the Constitution of the State of Oregon.

Article XV, § 4, of the Constitution provides:

"Lotteries, and the sale of lottery tickets, for any purpose whatever, are prohibited, and the legislative assembly shall prevent the same by penal law."

The proposed measure, so far as is material herein, provides as follows:

"Section 4. (a) REVENUE FOR OLD AGE SECURITY, AND OTHER PURPOSES.—For the purpose of raising revenue for old age security, and for other special and general purposes, and for the purpose of better control and regulation in the interests of the public morals and welfare, the Legislative Assembly shall provide by law for licensing, taxing, and regulating bowling alleys; bridge studios; pool and billard rooms; shooting galleries; horse racing, dog racing, other forms of racing, and racing establishments, conducted under the mutual or other wagering system; bank nights; punch-boards; pin-ball, collective pin-ball, and collective skill games; vending machines; and raffles and bazaars conducted by a resident non-profit corporation for local charitable purposes; and for the same purpose, the Legislative Assembly may license, tax, and regulate, or it may prohibit any or all other games or devices of skill, chance or amusement.

"(b) LICENSES EXCLUSIVE. — The Licenses and taxes provided for herein shall be exclusive, but the Legislative Assembly may provide by law for a division of income from such license fees and taxes as follows: not to exceed forty per centum thereof to the city, town, or county in which any establishment, race, game, or device is licensed to operate; not to exceed ten per centum thereof to publicly supported fairs and exhibitions; and the remainder for the purposes of the State as specified in the Licensing Act.

"(c) LOTTERIES PROHIBITED.—Lotteries, and the sale of Lottery tickets, except as herein otherwise specifically provided, are prohibited, and the Legislative Assembly shall prevent the same by penal laws.

"(d) LOTTERIES DEFINED.—A Lottery is any scheme for the disposal or distribution of money or other property by pure chance among persons who have paid, or promised or agreed to pay, any valuable consideration for the chance of obtaining such property, or a portion of it, or for any share of or interest in such property, upon any agreement, understanding, or ex-

pectation that it is to be distributed or disposed of by lot or some other similar formula of pure chance.

"(e) EFFECTIVE DATE OF THIS AMENDMENT * * * *

"(f) SAVING CLAUSE * * * *

"(g) REPEALING CLAUSE * * * *"

The ballot titles prepared by the attorney-general are as follows:

Short Ballot Title:

"AMENDMENT LEGALIZING LOTTERIES AND OTHER GAMBLING; PROVIDING STATE LICENSING THEREOF."

General Ballot Title:

"Purpose: Amendment virtually repealing constitutional provision prohibiting lotteries; authorizes licensing them; declaring lawful and requiring State to license, tax, regulate certain amusement places; horse, dog and other racing involving wagering; bank nights; punch-boards; pin ball; skill games; vending machines; charitable raffles and bazaars; authorizing State to license, tax, regulate, prohibit any other skill or chance games or devices. No other licenses or taxes permitted; permitting municipality where games operate receiving not over 40% of license taxes; public fairs and exhibitions not exceeding 10%; remainder, for old-age security or state purposes specified by law; forbidding unlicensed lotteries; defining lotteries as pure chance schemes."

Voting Machine Ballot Title:

"Purpose: Legalizing and authorizing the State exclusively to license lotteries and all other gambling games and devices of chance or skill; providing for disposition of license taxes."

Explanatory words to accompany said title on the ballot:

"Yes. I vote for the proposed amendment.

"No. I vote against the proposed amendment."

Appellant submits the following ballot titles:

Short Ballot Title:

"AMENDMENT DEFINING LOTTERIES; LEGALIZING CERTAIN GAMING; PRODUCING PUBLIC REVENUE."

or

"AMENDMENT TO CONTROL AND LICENSE CERTAIN GAMING FOR REVENUE PURPOSES."

General Ballot Title:

"Purpose: Amendment defining, prohibiting lotteries; for revenue producing purposes for old-age security and other purposes, for better control and regulation, State shall license, tax, regulate certain amusement places; horse, dog, and other racing involving wagering; bank-nights; punchboards; pinball and skill games; vending machines; charitable raffles and bazaars; authorizing State to license, tax, regulate or prohibit other skill or chance games or devices not lotteries; State licensing exclusive; license fees divided not exceeding 40% to municipality where games operated; not exceeding 10% to public fairs, exhibitions; remainder for State purposes specified by law."

Voting Machine Ballot Title:

"Purpose: For raising revenue, directing exclusive State licensing of certain amusement places, games of chance and skill; providing disposition of license fees."

The principal objection of appellant to the short ballot title as submitted by the attorney-general is that it is made to appear therefrom that all lotteries are to be licensed, whereas, according to its contention, "no lottery whatever can be or is legalized." We agree that the proposed measure does not purport to legalize all lotteries; but we fail to concur in the view that it prohibits the licensing of all lotteries. If it is the intention of the framers of this proposed measure to prohibit

all lotteries, no amendment to Article XV, § 4, of the Constitution is necessary. It will be observed from subdivision (c) of § 4 of the measure that lotteries are prohibited "except as herein otherwise specifically provided."

Under subdivision (a) of the section, authority is vested in the Legislative Assembly to license and regulate certain designated gambling and gaming devices, some of which are lotteries within the meaning of the term "lotteries" as defined under subdivision (d) of the proposed measure. Yet, counsel, in oral argument, asserts: "This amendment seeks to specifically define lotteries and then to prohibit them. There is no lottery legalized nor authorized to be legalized by this act and no lottery is authorized to be licensed by this act." In our opinion, it is not the purpose of the measure, as stated by the attorney-general, to "virtually" repeal the constitutional provision prohibiting lotteries, although it does limit or restrict such provision.

The court hereby certifies to the secretary of state the following ballot titles which, it is believed, will fairly submit to the voters of the state for their approval or rejection the proposed measure:

Short Ballot Title:

"CONSTITUTIONAL AMENDMENT LEGALIZING CERTAIN LOTTERIES AND OTHER FORMS OF GAMBLING."

General Ballot Title:

"Purpose: Amendment limits present Constitutional prohibition of lotteries. Legalizes certain lotteries and other forms of gambling and gaming and authorizes State exclusively to license them. Authorizes licensing and regulation of bowling alleys; bridge studios; pool and billard rooms; shooting galleries; horse and dog racing; other forms of racing; bank nights; punch boards; pinball games; vending ma-

chines; and raffles and bazaars for local charitable purposes. Authorizes legislature to provide for distribution of forty per cent of license tax to municipalities; ten per cent to public fairs and exhibitions; and remainder for old age security or other purposes specified by law. Defines lotteries.''

Voting Machine Ballot Title:

''AMENDMENT LEGALIZING CERTAIN LOTTERIES AND OTHER FORMS OF GAMBLING.

''Purpose: Authorizing the State exclusively to license certain lotteries and other forms of gambling and providing for distribution of license taxes.''

Explanatory words to accompany said title on the ballot:

''Yes. I vote for the proposed amendment.

''No. I vote against the proposed amendment.''

Kelly, J., not sitting.